**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| HERBERT CLIFTON HECTOR, | : | MOTION TO VACATE |
| Fed. Reg. No. 63733-019, | : | 28 U.S.C. § 2255 |
| Movant, | : | |
| | : | CRIMINAL ACTION NO. |
| | : | 1:12-CR-183-TWT-JSA-1 |
| v. | : | |
| | : | CIVIL ACTION NO. |
| UNITED STATES OF AMERICA, | : | 1:17-cv-948-TWT-JSA |
| Respondent. | : | |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Movant Herbert Clifton Hector has filed the instant motion to vacate pursuant to 28 U.S.C. § 2255. (Doc. 160). Movant seeks to challenge the constitutionality of his convictions and sentences, which were imposed on January 3, 2014, following a jury trial in the Northern District of Georgia.

I.    Factual And Procedural History

A.    Procedural History

On June 12, 2012, Movant and a co-defendant, Anwand Jackson, were indicted by a federal grand jury in the Northern District of Georgia and charged with aiding and abetting the commission of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d), and 2, and aiding and abetting the use of a firearm during a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2.

(Doc. 17).  Jackson entered a guilty plea to both counts on August 30, 2012.  (Doc. 37).

On May 9, 2013, a federal grand jury entered a superseding indictment against Movant only, and charged him with conspiring with Jackson and others to commit armed bank robbery, in violation of 18 U.S.C. §§ 371, 2113(a), 2113(d), and 2, committing and aiding and abetting the commission of armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d), and 2, and aiding and abetting Jackson with knowingly using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 2.  (Doc. 83). Following a jury trial from October 7, 2013 through October 9, 2013, the jury found Movant guilty of all three counts.  (Docs. 121-125).  On January 3, 2014, Chief U.S. District Judge Thomas W. Thrash, Jr. sentenced Movant to a net total of 163 months of imprisonment plus restitution.[1]  (Doc. 140).

Several important events occurred during the trial that warrant discussion here.  First, after the close of evidence and during the charge conference Judge Thrash denied Movant's counsel's request to charge the jury on modified aiding and abetting and *Pinkerton* liability instructions [*see* Doc. 122], instead utilizing

---

[1]     Jackson was sentenced on the same day as Movant to a total term of 111 months of imprisonment.  (Doc. 141).

the Eleventh Circuit pattern jury instructions for both.[2]  (Doc. 153 at 115).   The Court also elected not to charge the jury on the lesser-included offense of unarmed bank robbery since it was undisputed that Movant's co-defendant had the gun drawn when he and Movant entered the bank.  (Doc. 153 at 124-25).   Additionally, although Count One of the superseding indictment charged Movant with conspiracy to commit armed bank robbery, when Judge Thrash described that crime to the jury he instructed them that Movant was charged with conspiracy to commit bank robbery, omitting the word "armed."  (Doc. 153 at 155).   Similarly, the verdict slip given to the jury also described Count One as a conspiracy to commit bank robbery rather than armed bank robbery.  (Doc. 125).

---

[2]      Under the *Pinkerton* doctrine set forth in *Pinkerton v. United States*, 328 U.S. 640 (1946), a defendant can be held liable for all reasonably foreseeable offenses committed by co-conspirators during and in furtherance of the conspiracy. *Id.* at 645-48.  Movant's counsel requested a charge that not only would instruct the jury that Jackson's actions had to have been reasonably foreseeable to Movant, but also that they were "reasonably anticipated by [Movant] as a necessary or natural consequence of the unlawful agreement."  (Doc. 122 at 4; Doc. 153 at 118; Doc. 154 at 10).

In connection with the aiding and abetting instructions, Movant's counsel asked that the Court charge the jury that it must find that Movant had "actual knowledge" *and* that Movant must have known to a "practical certainty" that Jackson would be using a gun.  (Doc. 122 at 2).  Instead, Judge Thrash used the Eleventh Circuit pattern jury instructions on aiding and abetting, which states that aiding and abetting requires proof that Movant "intentionally associated with or participated in the crime, not just that [Movant] was simply present at the scene of the crime or knew about it.   In other words, [the jury] must find beyond a reasonable doubt that [Movant] was a willful participant and not merely a knowing conspirator.  (*See* Doc. 153 at 160; Doc. 154 at 9-10).

During deliberations, the jury sent a note to Judge Thrash, which stated: "Judge Thrash, can we get a copy of the third charge, what the laws read. We are working on what carry or use of a firearm is." (Doc. 154 at 3). Judge Thrash responded to that note by first telling the jurors that the third charge they were to consider is Count Three of the indictment, and then he re-charged the jury on the elements of using a firearm during a crime of violence. (Doc. 154 at 4). After more deliberation, the jurors sent Judge Thrash another note, which asked whether, as stated in Count Three of the indictment, Movant needed to be in physical possession of the firearm he was to be considered carrying. (Doc. 154 at 8). Judge Thrash first responded to that note as follows:

> The answer to that question is no. The Defendant can be convicted of the crime alleged in Count 3 if he aids and abets another person who uses or carries a firearm in relation to or in furtherance of the alleged armed bank robbery. Defendant can also be convicted of the offense alleged in Count 3 if a co-conspirator in furtherance of the conspiracy used or carried a firearm.

(*Id.*). After Movant's counsel objected to that answer because it omitted the "reasonably foreseeable" part of *Pinkerton*, Judge Thrash brought the jury back in and told them:

> I need to do a do-over on the answer to your question. Let me try again, see if I get it right this time.
>
> The answer to your question is no. A Defendant – the Defendant can be convicted of the offense alleged in Count 3 of the indictment without being in physical possession of a firearm if he aided and abetted another person who carried or used a firearm in relation to and

4

in furtherance of the armed bank robbery alleged in Count 2. Second, a Defendant – the Defendant can be convicted of the offense alleged in Count 3 if a co-conspirator carried or used a firearm in furtherance of the conspiracy and that the Defendant was a knowing and willful member of the conspiracy when the crime was committed and it was reasonably foreseeable that a co-conspirator would commit the crime as a consequence of the conspiracy.

That is the instruction I gave you yesterday. That's the instruction that is – you are to apply today. And you've got the exact language in the copy of the instructions that I gave you yesterday.  But that's the answer to your question. I left off the reasonably foreseeable part when I gave you the answer earlier about the co-conspirator liability. So I think I've got it right this time. So go back and resume your deliberations.

(*Id.* at 9-10).

After he was convicted and sentenced, Movant filed an appeal with the Eleventh Circuit Court of Appeals through the same counsel he had at trial and raised the following issues for relief:

(1)    the district court's aiding and abetting instruction was erroneous because it lacked the "advance knowledge" language required by *Rosemond v. United States*, 134 S. Ct. 1240 (2014), which was decided after Movant's trial but before his appellate brief was filed;

(2)    the district court erred by refusing to provide Movant's requested theory of the defense instruction;

(3)    the district court erred in failing to provide Movant's requested instruction on *Pinkerton* liability;

(4)    the district court erred in failing to give an instruction on the lesser included offense of bank robbery;

(5)    the district court constructively amended the indictment by asking the jury to determine whether a firearm was brandished;

5

(6)     the evidence was insufficient to convict Movant on Counts Two and Three of the indictment; and

(7)     Movant's sentence was substantively unreasonable.

*United States v. Hector*, No. 14-10255 (Appellant's Brief) (June 23, 2014), *available at* https://ecf.ca11.uscourts.gov/n/beam/servlet/TransportRoom (last visited 4/11/2019).

Before oral argument, the Eleventh Circuit panel sent a letter to counsel directing them to be prepared to address the following question:

> Assuming for the sake of argument that the district court erred when it failed to instruct the jury that Hector needed "advance knowledge" of a firearm to be convicted as an aider and abettor and when it failed to instruct the jury on the lesser-included offense of unarmed bank robbery, were those errors harmless because Hector was convicted of conspiracy to commit armed bank robbery? After all, Hector has not challenged his conviction of conspiracy to commit armed bank robbery.

*Hector*, No. 14-10255 (Letter to Counsel) (March 6, 2015).  Oral argument was held on April 17, 2015.  *See Hector* (Docket).  The Eleventh Circuit affirmed Movant's convictions and sentences on July 6, 2015.  *United States v. Hector*, 611 F. App'x 632 (11th Cir. 2015).  Movant filed a combined petition for rehearing *en banc* and panel rehearing on July 27, 2015.  *Hector*, No. 14-10255 (Rehearing Packet) (July 25, 2015).  The Eleventh Circuit denied that petition on September 25, 2015, and the United States Supreme Court denied Movant's petition for certiorari on March 28, 2016.  *Hector*, No. 14-10255 (Order) (July 27, 2015);

*Hector v. United States*, No. 15-8329, __ U.S. __, 136 S. Ct. 1505 (March 28, 2016).

Movant executed the instant *pro se* motion to vacate under 28 U.S.C. § 2255, and raises two claims of ineffective assistance of counsel:  that Movant received ineffective assistance of counsel when counsel failed to object to the jury instruction and verdict slip which referred to Count One as charging conspiracy to commit bank robbery instead of conspiracy to commit armed bank robbery and when counsel failed to raise that same issue on appeal.  (Doc. 160).

B.     <u>Factual History</u>

The Eleventh Circuit summarized the relevant facts in the case as follows:

On 15 May 2012, Hector and his co-conspirator, Jackson, robbed a Wells Fargo bank at gunpoint.  The two arrived at the bank together in the same vehicle. Video-surveillance evidence shows Hector holding the bank's door open for Jackson, who entered the bank with his handgun drawn.  Both men were wearing masks.  After each man demanded money from the bank's tellers, they put approximately $12,000 into a bag carried by Hector, while Jackson pointed the weapon at one of the tellers. The video reflects an obviously well-planned and -coordinated robbery; it lasted only approximately 40 seconds.  Both men then escaped in the vehicle in which they had arrived at the bank; it was driven by Jackson, with Hector in the front passenger seat.

The police were alerted to the getaway vehicle's location by a GPS tracking device embedded with the money in the bag Hector carried. Police pursued that vehicle, with speeds reaching 99.5 miles per hour. While exiting the highway, the vehicle collided with another vehicle.

After the collision, Jackson and Hector exited the vehicle and both ran towards a QuikTrip filling station just off the exit ramp.  They then

ran in different directions.  Jackson fled to a nearby hotel, where police found him, in possession of a handgun.  Hector ran in the opposite direction, through a large drainage tunnel that passed under a highway. He then ran through a warehouse, in which an employee was working.  Hector was apprehended in a smaller drainage tunnel on the other side of that warehouse.

In June 2012, Jackson and Hector were indicted for: committing, and aiding and abetting the commission of, armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), (d); and using, and aiding and abetting the use of, a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  After Jackson pleaded guilty to both counts, a May 2013 superseding indictment charged Hector with: conspiracy to commit bank robbery by use of a handgun, in violation of 18 U.S.C. §§ 2113(a), (d) and 2 (count 1); committing, or aiding and abetting, bank robbery by use of a handgun, in violation of 18 U.S.C. §§ 2113(a), (d) and 2 (count 2); and committing, or aiding and abetting, the knowing use and carrying of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 2 (count 3).  Count 1 provided a number of overt acts, including brandishing a handgun. Counts 2 and 3 incorporated those overt acts by reference.

At trial, the Government presented the video recording that captured the robbery, including Jackson's brandishing the handgun. And, the Government presented witnesses who testified to Hector's and Jackson's coordinated actions during the robbery. It, however, did not present direct evidence of events before the robbery began.

After the Government rested, Hector moved unsuccessfully for judgment of acquittal on count 3.  In other words, he did not seek that relief for counts 1 and 2.  Subsequently, Hector did not present evidence.

At the charge conference, the Government proposed instructing the jury on, *inter alia*, aiding and abetting (defendant aids and abets a person if he intentionally joins with the person to commit a crime, and is a willful participant and not merely a knowing spectator) and *Pinkerton* (reasonable foreseeability), *see Pinkerton v. United States,* 328 U.S. 640, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946).  On the other

hand, for aiding and abetting, Hector requested the court to instruct that, to convict for either armed bank robbery (count 2) or aiding and abetting the carrying of a firearm in relation to a crime of violence (count 3), the jury must find Hector had actual knowledge that Jackson would use a firearm in the commission of the robbery.

Hector also requested the court instruct: that, to convict under *Pinkerton*, the jury must find the use of the firearm was "reasonably foreseeable . . . as a necessary or natural consequence of the unlawful agreement", which is more specific than the eleventh circuit pattern jury instructions; and on the lesser-included offense of unarmed bank robbery. The court denied Hector's requests and gave the eleventh circuit pattern jury instructions, to which Hector objected.

At the Government's request, and over Hector's objection, the court amended the jury verdict form to include a special interrogatory, asking whether a firearm was "brandished" during the robbery. Hector objected unsuccessfully to that amendment, claiming it constituted a constructive amendment to the indictment.

After instructing the jury on conspiracy, armed bank robbery, and carrying a firearm in relation to a crime of violence, the district court explained aiding-and-abetting liability to the jury:

> A Defendant aids and abets a person if the Defendant intentionally joins with the person to commit a crime. A Defendant is criminally responsible for the acts of another person if the Defendant aids and abets the other person. A Defendant is also responsible if the Defendant willfully directs or authorizes the acts of an agent, employee or other associate. But finding that a Defendant is criminally responsible for the acts of another person requires proof that the Defendant intentionally associated with or participated in the crime, not just that the Defendant was simply present at the scene of a crime or knew about it. In other words, you must find beyond a reasonable doubt that the Defendant was a willful participant and not merely a knowing spectator.

Hector unsuccessfully renewed his objection to the aiding-and-abetting instruction, based on its lacking a knowledge component.

During its deliberations, the jury asked the judge whether Hector must have been in physical possession of the firearm to be considered "carrying" it. The judge responded in the negative, explaining, once again, that the jury could convict Hector of carrying and using a firearm in furtherance of a violent crime under either aiding-and-abetting or *Pinkerton* liability.

The jury convicted Hector on all three counts and found a firearm was "brandished" during the course of the robbery. After sentencing, the court entered the earlier-described judgment for conspiracy to commit armed bank robbery, armed bank robbery, and brandishing a firearm in the commission of a crime of violence.

*Hector*, 611 F. App'x at 635-36.

II.    Standard of Review

Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990). Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to

10

collateral attack." *Id.* (citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

The Court should order an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." As discussed below, Movant's § 2255 motion and the record in this case conclusively show that he is not entitled to relief in connection with his claims. Thus, no evidentiary hearing is required.

III.   Analysis

A.   The Standard For Evaluating Ineffective Assistance Of Counsel Claims

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 688). To establish deficiency, a

petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness[.] . . .'" *Wiggins* 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688).  To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Secretary, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010). "An attorney's performance is not deficient in hindsight just because he or she made one choice versus another." *Scott v. United States*, 890 F.3d 1239, 1259 (11th Cir. 2018). *See also Willis v. Newsome*, 771 F.2d 1445, 1447 (11th Cir. 1985) ("Tactical decisions do not render assistance ineffective merely because in retrospect it is apparent that counsel chose the wrong course.").  An ineffective assistance claim should be examined based on the "'totality of the circumstances[,]'" *McCoy v. Newsome*, 953 F.2d 1252, 1262 (11th Cir. 1992) (citations omitted), and the court may "dispose of [the] ineffectiveness [claim] on either of its two grounds." *Atkins v. Singletary*, 965 F.2d 952, 959 (11th Cir. 1992). *See also Strickland*, 466 U.S. at  697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.")

The *Strickland* standard also applies to claims of ineffective assistance of counsel on appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Brooks v.*

*Commissioner, Alabama Dep't of Corr.*, 719 F.3d 1292, 1300 (11th Cir. 2013).  To

succeed on a claim of ineffective assistance of appellate counsel, as on a claim of

ineffective assistance of trial counsel, a petitioner must overcome "a strong

presumption that counsel's conduct falls within the wide range of reasonable

professional assistance[.]"  *Strickland*, 466 U.S. at 689.  A petitioner does not have

a right to have every possible argument raised on appeal, and it is up to appellate

counsel to "'winnow[] out' weaker arguments[.]"  *Jones v. Barnes*, 463 U.S. 745,

751-52 (1983); *Hittson v. GDCP Warden*, 759 F.3d 1210, 1263 (11th Cir. 2014).

Finally, appellate counsel is not ineffective for failing to raise a frivolous argument

on appeal.  *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).

> B.   <u>Movant Has Failed To Demonstrate Ineffective Assistance Of</u>
>      <u>Counsel At Trial Or On Appeal.</u>

Movant's arguments center around the fact that although Count One of the

superseding indictment against Movant charged Movant with conspiracy to

commit *armed* bank robbery, both the jury verdict form and the jury instructions

described that charge as a conspiracy to commit bank robbery.  Movant claims that

counsel should have objected to both the erroneous jury instructions and the

erroneous charge on the verdict form, because both allegedly constituted

unconstitutional constructive amendments to the superseding indictment.  (*See*

Doc. 153 at 264).  Movant also claims that for the same reasons counsel should

have raised this issue on appeal.  And according to Movant, the Court should find

that counsel was, in fact, ineffective because counsel admitted that she provided ineffective assistance based on these discrepancies. (Doc. 160, Attach. 6).

    1.    <u>Counsel's Statements To Petitioner After The Appeal</u>

Movant points to his trial and appellate counsel's statements in her post-appeal letter allegedly admitting ineffectiveness. (*Id.*). In this letter, counsel advised Movant that to challenge the conviction as to Count One, he would have to argue counsel's ineffectiveness for failing to object at trial to or appeal the reference to "bank robbery" instead of "armed bank robbery" in the jury instructions and verdict form. *Id*. Counsel also advised that she believed "the appeal would have turned out differently" even as to Counts Two and Three had she challenged Count One at trial and at sentencing. *Id.*

The Court considers this letter but does not afford it substantial weight in determining whether Movant has met his burden under *Strickland*. First, this letter is not in fact an admission or concession of ineffectiveness. It simply advises Movant as to the procedural means by which he would need to challenge his convictions and the arguments that he would have to make. While counsel voiced her opinion as to prejudice—"[if] I had [challenged Count One], I think the appeal would have turned out differently"—counsel's retrospective speculation in that regard is not entitled to significant weight. Rather, the Court must look to the

14

totality of the facts and determine for itself whether the Movant has satisfactorily demonstrated prejudice within the meaning of *Strickland*.

Second, even if counsel told Movant that she thought she was ineffective, Movant still must present evidence of any such alleged incompetency and that he was prejudiced thereby. *See e.g., Hoffman v. Lazaroff*, No. 5:14-cv-1367, 2015 WL 5729578, at *5 (N.D. Ohio Sept. 28, 2015) ("Appellate counsel's alleged statements to the petitioner concerning her feeling that she argued an issue on appeal incorrectly does not provide sufficient support to proceed on claim of ineffective assistance of appellate counsel."); *Lee v. Hershberger,* No. RDB-09-2203, 2011 WL 6258466, at *4-5 (D. Md. Dec. 13, 2011) (finding that the petitioner did not meet the first prong of *Strickland* "[d]espite defense counsel's post-trial change of heart about her strategy"; nor did he meet the prejudice prong); *Crawley v. South Carolina Dep't of Corr.*, No. 9:08-1051-TLW-BM, 2009 WL 580440, at *6 (D. S.C. Mar. 5, 2009) (reviewing ineffective assistance of counsel claim and finding counsel was not ineffective even though counsel supposedly admitted ineffective assistance for failing to request discovery); *Pacyon v. New York State Parole*, No. 90-CV-0796E(H), 1995 WL 264676, at *1 (W.D. N.Y. Apr. 25, 1995) ("[A] criminal Defendant's representation is not constitutionally ineffective just because trial counsel admits to inexperience and expresses doubts about his adequacy; there must be evidence (whether of acts or omissions) of the

counsel's incompetency.  Pacyon's argument then contains an untenable premise – namely, that facts that could not be the basis of a finding of constitutional ineffectiveness of counsel (i.e., an attorney admitting to inexperience and professional inadequacy) comprise facts that could be the basis for such."). Counsel's statements, therefore, do not overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance; nor proved that Movant demonstrated prejudice in connection therewith.

2.      Trial Counsel Was Not Ineffective For Failing To Object
To The Jury Instructions Or The Verdict Form.

There is no discernable tactical reason for trial counsel to have decided against objecting to the use of the phrase "bank robbery," rather than "armed bank robbery," as to Count One in the jury instructions and verdict slip.  Thus, the Court assumes that the lack of an objection in this regard at trial was an oversight.  The Court also assumes for purposes of this analysis that this oversight was unreasonable for purposes of the first *Strickland* prong.

Regardless of whether a deficiency occurred satisfying the first prong of *Strickland*, however, Movant cannot show a reasonable likelihood that any objection would have led to a different result.  First, the superseding indictment made clear that the jury was to consider an armed bank robbery rather than an unarmed bank robbery; *i.e.,* a "note job." As Movant concedes, the jury was provided with this superseding indictment during its deliberations.  Further, during

16

the opening and closing instructions, Judge Thrash specifically explained to the jury that the superseding indictment was the charging document to which the jury must refer when determining whether Movant committed the offenses charged. (*See* Doc. 152 at 6, 8; Doc. 153 at 252, 255, 263).  Indeed, the jury's second note indicated that the jurors did, in fact, refer to the indictment during their deliberations.  (*See* Doc. 160, Attach. 1 at 5-6) ("Judge Thrash, *as stated in Count 3 of the indictment*, does the Defendant need to be in physical possession of the firearm to be considered carrying?") (Doc. 154 at 8) (emphasis added).

As discussed previously herein in Section I.A., *supra*, Count One of the superseding indictment made clear that Movant was charged with conspiracy to commit *armed* bank robbery, specified that Movant and Jackson agreed to take currency from the bank employees by "force, violence and intimidation, and that they would assault and put in jeopardy the lives of said bank employees by the use of a dangerous weapon, that is, a handgun[,]" and described several overt acts in furtherance of the conspiracy which included the use of a handgun.  (Doc. 83; Doc. 160, Attach. 1 at 5-6).

Second, by finding Movant guilty of Counts Two (aiding and abetting an armed robbery) and Three (aiding and abetting the knowing use of a firearm during a crime of violence) as well as specifically finding that Movant brandished a gun, even under a pre-*Rosamond* instruction, the jury necessarily found that Movant

"intentionally join[ed]" with his co-defendant in committing *armed* bank robbery, and/or that it was reasonably foreseeable that his conspirator would use a gun. (Doc. 153 at 160-161). In other words, in rendering its verdicts on Counts Two and Three, the jury necessarily concluded that Movant knowingly joined with Jackson to commit armed bank robbery. There is therefore no likelihood that the jury would have somehow reached a different result as to Count One because the instructions and verdict slip happened to omit the word "armed."

Third, the case included overwhelming video evidence of an "obviously well-planned and -coordinated robbery[,]" and many of the witnesses testified that it appeared that Movant and Jackson's actions were "coordinated" and "rehearsed." *See Hector*, 611 F. App'x at 635 ("[T]he Government presented witnesses who testified to Hector's and Jackson's coordinated actions during the robbery."); Doc. 152 at 35-36, 43-44, 49. Even more, the prosecution's closing arguments made clear that the case hinged on finding that the Defendants committed *armed* bank robbery. The prosecution argued that this robbery was designed to be armed, as Movant and Jackson concealed their identities with Halloween masks, and ran into the bank and began yelling from the minute they entered. (*See* Doc. 153 at 141). Indeed, the prosecution argued specifically to the jury that "***This was not a note job***." (*Id.*) The Government's arguments certainly never suggested that the jury could convict on any count based on something less than a finding of armed bank

18

robbery.  But more importantly, the prosecution's arguments affirmatively made clear that its entire theory of the case was that Movant had conspired to the use of the gun:

> People don't go into banks wearing Halloween masks to do a note job bank robbery, to silently slip a note to the tellers and try to get money without anyone even really knowing what's going on.  This was a robbery that was used that was designed to be armed.  That's why you conceal your identity.  That's why you wear – that's why you come in with two people at once, moving fast, yelling at people.

*Id*.

Finally, the evidence showed that Movant knew that Jackson would be using a gun to carry out the bank robbery.  One of the bank employees saw both Movant and the co-defendant jump out of the car with masks on and the gun drawn, the surveillance video shows Movant opening the door for Jackson while Jackson displayed the gun, and a still picture from the video camera shows Movant looking right at Jackson while the gun was drawn.  (Doc. 130, Attach. 1 at 4; Trial Exh. 6). Regardless, the jury could, and did, permissibly infer that Movant intended to aid an armed bank robbery from Movant's participation after Jackson displayed the gun.  *See Rosemond v. United States*, 572 U.S. 65, 78 n.9 (2014) ("Of course, if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge. In any criminal case, after all, the factfinder can draw

19

inferences about a defendant's intent based on all the facts and circumstances of a crime's commission.").

For all of these reasons, Movant cannot show that there is a reasonable probability that, but for counsel's failure to object to the verdict form and jury instructions which omitted the word "armed" from the description of Count One, the jury would have acquitted him thereof.  Accordingly, Movant cannot prevail on his ineffective assistance of trial counsel claim.

3.     Movant Did Not Receive Ineffective Assistance Of Counsel On Appeal.

Movant also claims that his appellate counsel – who was the same as his trial counsel – should have raised on appeal the aforementioned issues; *i.e.,* the verdict form and jury instructions omitted the word "armed" when describing Count One. Any such issues are without merit.  Put simply, Movant has failed to overcome the presumption that appellate counsel's conduct fell within the wide range of reasonable, professional representation.

Counsel raised seven issues on appeal.  The tactical decision as to what issues to raise and what not to raise on appeal is quintessentially left to the discretion of counsel.  In particular, counsel is afforded great leeway with regard to any decisions to focus on the issues that might present the most merit and have the most impact.  Here, as a threshold matter, any challenge as to the reference to "bank robbery" in the jury instructions and verdict slip was not preserved at trial,

and therefore would have likely been barred from consideration for the first time on appeal.  The Court therefore cannot find that counsel acted unreasonably in choosing to forego raising this unpreserved and likely futile issue on appeal.  For the same reasons, there was no prejudice, because there was little likelihood of any such issue being entertained on the merits for the first time on appeal.[3]

Moreover, the Eleventh Circuit's opinion made clear that "jury-instruction errors are subject to harmless-error review."  *Hector*, 611 Fed. App'x at 638.  For all of the reasons expressed above, even if this claim had been raised and entertained on appeal, the omission of the word "armed" would have likely been deemed to be harmless.  Indeed, the Eleventh Circuit itself stated that the "video reflects an obviously well-planned and -coordinated robbery," that Movant affirmatively opened the door and allowed Jackson in the bank after Jackson had visibly drawn his gun, and that witnesses testified to "Hector's and Jackson's coordinated actions during the robbery."  Further, the court's opinion specifically noted, in response to Movant's argument as to the wording of the conspiracy instructions and verdict form, that:

---

[3]    Counsel did, in fact, flag the issue regarding Count One's scope in her reply brief by stating:  "It is worth noting that although Mr. Hector was charged with conspiracy to commit both bank robbery and armed bank robbery, the jury was only asked to specifically find that he conspired to commit bank robbery." Appellate          Reply          Brief,          *available*          *at* https://ecf.ca11.uscourts.gov/n/beam/servlet/TransportRoom at 26 n.5 (October 9, 2014).  Counsel apparently also discussed the issue during oral argument.

> Nevertheless, the superseding indictment in count 1 charged Hector
> with conspiracy to commit armed bank robbery, and listed eight overt
> acts, some of which involved the use of a firearm. Further, the jury
> had the indictment during its deliberations. And, the judgment against
> Hector stated: "The defendant was found guilty by jury on Count(s) 1,
> 2, 3 of the Superseding Indictment" and then described count 1 as
> "Conspiracy to commit armed bank robbery".

*Id.* at 638-639.  Finally, the Eleventh Circuit relied on *Pinkerton* liability as an

alternative basis to affirm Movant's convictions since "the evidence was sufficient

to convict Hector, because the jury could have determined the use of a firearm in

the robbery was a 'reasonably foreseeable' consequence under *Pinkerton*."  *Id.* at

641.[4]  *See also United States v. Breal*, 593 F. App'x 949, 953 (11th Cir. 2014)

(rejecting the appellant's argument that the court should not have instructed the

jury on *Pinkerton* liability for aiding and abetting the possession of a firearm

during a crime of violence because the government presented evidence that the

appellant knew in advance that he would be involved in a conspiracy to rob a drug

dealer, and thus he could reasonably have foreseen the use of firearms in the

furtherance of that conspiracy; therefore, he could have been convicted under a

*Pinkerton* liability theory).

　　For all of these reasons, Movant has not demonstrated that counsel's failure

to raise these issues on appeal was unreasonable or that there is a reasonable

---

[4]　　Notably, the Eleventh Circuit previously had indicated that *Pinkerton* liability is distinct from aiding and abetting liability.  *See United States v. Rodriguez*, 591 F. App'x 897, 904-05 (11th Cir. 2015).

probability that the outcome would have been different had she done so. Movant, therefore, is not entitled to relief.

III.   Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Herbert Clifton Hector's motion to vacate his sentence [Doc. 160] be **DENIED WITH PREJUDICE**.

IV.   Certificate Of Appealability

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. § 2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the § 2255 motion. *See id.* "The question is the debatability of the underlying constitutional

claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325).   In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court's determination as to whether Movant received ineffective assistance of trial counsel is a sufficiently close call that the undersigned finds that a COA is warranted as to that issue.   However, reasonable jurists would not find the undersigned's determination that Movant has not demonstrated that he received ineffective assistance of on appeal to be "debatable or wrong."   If nothing else, the issue that Movant insists should have been asserted on appeal was entirely unpreserved below.   Thus, if there was any arguable ineffectiveness, it was at the trial level.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be granted as to the claim of ineffective assistance of trial counsel but denied as to the claim of ineffective assistance of appellate counsel.

The Clerk is **DIRECTED** to terminate the reference to the undersigned
Magistrate Judge.


**IT IS SO RECOMMENDED** this 9th day of May, 2019.


JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE